**BOWER LAW GROUP, PC**
David E. Bower (SBN 119546)
600 Corporate Pointe, Suite 1170
Culver City, California 90230
Tel. 213.446.6652
dbower@bowerlawgroup.com

**ADEMI LLP**
Shpetim Ademi
John D. Blythin
Jesse Fruchter
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com

*Attorneys for Plaintiff Kevin Smith*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN SMITH,** Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**INCOMM FINANCIAL SERVICES, INC., D/B/A INCOMM PAYMENTS ("INCOMM") AND PATHWARD, N.A.,**<br><br>Defendants. | Case No.  5:23-cv-4687<br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff KEVIN SMITH ("Plaintiff"), individually and on behalf of all others similarly situated, brings this lawsuit against InComm Financial Services, Inc., d/b/a InComm Payments ("InComm") and Pathward, N.A. ("Pathward") (jointly, "Defendants") (collectively, the "Parties"), and allege as follows:

## I.    I. INTRODUCTION

1.    InComm sells prepaid debit cards, including general purpose, non-reloadable cards such as its "SecureSpend" ("Non-Reloadable Cards") and general purpose, reloadable cards such as "Vanilla" Visa and Mastercard Prepaid Cards. InComm also sells store-branded cards such as "Target" gift cards (hereinafter "Reloadable Cards," and collectively, "Gift Cards").

2.    Consumers can load cash on the reloadable varieties of Reloadable Cards at retail locations and even have their paychecks, government benefits, and tax refunds deposited directly onto Gift Cards.

3.    Non-Reloadable Cards have preloaded funds of a specified amount ("Face Value") from $10 to $500, available to be used by whomever purchased or received the Cards.

4.    Gift Cards operate on the Visa or MasterCard network, and consumers can use them as they would a Visa or MasterCard debit card to make purchases, withdraw cash from ATMs, and pay bills, among other things.

5.    InComm markets Gift Cards to consumers nationwide in many retail stores, including supermarkets, convenience stores, and other retailers. InComm also partners with large businesses that have nationwide distribution, such as Walmart, Target, Walgreens, and 7-Eleven, to market and sell Gift Cards. *See* https://www.securespend.com/whereToBuy.

CLASS ACTION COMPLAINT

6.    InComm has a history of denying consumers access to funds loaded onto their Gift Cards. People who receive these Cards ("Recipients") from Purchasers as gifts report that their Cards have no value or less than Face Value. Purchasers who use the Cards for their own purposes also report that their Cards have no value or less than the Face Value.

7.    The Face Value of Plaintiff's Cards was either partially or completely depleted, or never loaded onto the Cards, before Plaintiff tried to use the Cards.

8.    Plaintiff purchased three Gift Cards, none of which function correctly.

9.    Plaintiff asked InComm to reimburse Plaintiff the full-Face Value of his depleted and/or non-functioning Gift Cards. InComm did not do so. Instead, InComm routed Plaintiff's customer service phone calls requesting reimbursement of amounts to a call center in the Philippines, placed his calls on hold for hours, and then told Plaintiff that InComm would mail Plaintiff replacement cards, which never arrived.

10.    InComm is aware of the consumer complaints because InComm has responded to many of the complaints on the Better Business Bureau's ("BBB") website as well as by mail, email, and or telephonic communications. BBB's website indicates consumers have submitted 1,367 total complaints about InComm cards in the last 3 years.

11.    Despite being aware of consumer complaints regarding its Gift Cards, InComm continues to engage in unfair, unlawful, and fraudulent practices by marketing

- 3 -

Gift Cards with specific Face Value amounts, even though that is not the case.

12.     Plaintiff alleges the following upon personal knowledge as to Plaintiff and Plaintiff's own experiences and, as to all other matters, upon information and belief including due investigation conducted by his attorneys.

**II. PARTIES**

13.     Plaintiff KEVIN SMITH is, and at all times mentioned herein, was a natural person residing in the County of Santa Clara, in the State of California.

14.     Defendant InComm is a Delaware corporation with its principal place of business in Austin, Texas. As of approximately the date of this complaint, InComm is licensed to do business in the State of California and regularly conducts business in Santa Clara County, including partnerships with national businesses and banks that sell InComm debit cards in Santa Clara County.

15.     Defendant Pathward is a national bank with its primary place of business in Sioux Falls, South Dakota.

16.     Pathward was formerly known as "Metabank, N.A." and changed its name to Pathward on or around March 29, 2022. *See* "MetaBank Announces Name Change to                                                                      Pathward." https://www.businesswire.com/news/home/20220329005901/en/MetaBank-Announces-Name-Change-to-Pathward.

17.     Pathward is the issuer of the Gift Cards that were purchased by KEVIN

SMITH and members of the Classes. Upon information and belief, funds loaded onto Gift Cards are held at or transferred to Pathward.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

19.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965(a), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of Santa Clara, California. Furthermore, Defendants regularly conduct business within the State of California, Santa Clara County, and Plaintiff resides in this judicial district.

## FACTUAL ALLEGATIONS

20.     On or around December 2021, Plaintiff wanted to buy various prepaid cards for the purpose of making secure payments for consumer goods and services, including paying his phone bill and other bills.

21.     While shopping at Lucky Supermarket in Mountain View, California ("Lucky"), Plaintiff noticed SecureSpend Cards on display.

22.     The display for the Gift Cards advertised:

Non-Reloadable Gift Card

Safe for online shopping, traveling, paying bills and more!

**NO FEES** after purchase

23.    Plaintiff decided to purchase a $200.00 SecureSpend Card from Lucky. For the Gift Card, Plaintiff was charged $200.00 plus a $5.95 activation fee.

24.    Plaintiff also purchased another $200.00 SecureSpend Card and two $100.00 SecureSpend Cards for personal use and for gifts to family members, including Plaintiff's nephew. Plaintiff paid a $5.95 activation fee for each of the Gift Cards.

25.    However, none of the Gift Cards that Plaintiff purchased were functional.

26.    In order to activate the Gift Cards, Plaintiff had to create an online account with the website InComm.com and activate the card on the website. https://www.InComm.com/account/activate.

27.    Plaintiff was able to create an account and activate the Gift Card on or around December 22, 2021.

28.    Each time Plaintiff attempted to use the Gift Card to pay for a product or service, the Card was declined.

29.    Concerned as to why the Gift Card was consistently declined at the point-of-sale, Plaintiff called InComm customer service at (866) 387-7363 in early 2022. However, InComm customer service was never able to remedy any of the problems that had been experienced with the Gift Card.

30.   On most telephone calls to InComm customer service, Plaintiff was placed on hold for more than an hour and hung up without reaching a live representative.

31.   Particularly, during one telephone call to InComm customer service, Plaintiff navigated around various call options and attempted to connect with a live customer service representative.

32.   Eventually Plaintiff was put in contact with a customer service representative in a call center in the Philippines.

33.   The representative told Plaintiff that InComm would send Plaintiff a replacement Gift Card in the mail, but Plaintiff has never received a replacement card or even a notification that a replacement card had been shipped.

34.   Plaintiff has attempted to contact InComm customer service numerous times since his initial phone call, but every time since the initial call, Plaintiff has been disconnected after he selected the option to speak to a live customer service representative.

## CLASS ACTION ALLEGATIONS

35.   Plaintiff and the members of the Class and Sub-Class have all suffered an injury in fact as a result of the Defendants' unlawful conduct.

36.   Plaintiff brings this complaint on behalf of himself, and all others similarly situated under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

37.   The Nationwide Class (the "Class") that Plaintiff seeks to represent is

defined as follows:

> All persons within the United States who purchased or are the current owners of one or more InComm Prepaid Debit Card(s) and were blocked from use of any portion of the funds on their InComm Visa® Prepaid Debit Card(s).

38.    In addition, Plaintiff seeks to represent the following California Sub-Class (the "Sub-Class") of which Plaintiff is a member:

> All persons within the State of California who purchased or are the current owners of one or more InComm Prepaid Debit Card(s) and were blocked from use of any portion of the funds on their InComm Visa® Prepaid Debit Card(s).

39.    The Class and Sub-Class are collectively referred to as the "Classes."

40.    Excluded from the Classes are Defendants' officers, directors, and employees; the judicial officers and associated court staff assigned to this case; and the immediate family members of such officers and staff.

41.    ***Numerosity***. The members of the Class and Sub-Class are so numerous that their individual joinder is impracticable. InComm's website states that InComm has "Over 1000 Global Partners" and "over 525,000 points of retail distribution," and handles "over $50 billion in annual transaction volume." Based on the elevated volume of InComm cardholders, Plaintiff estimates that hundreds of thousands of InComm customers were harmed by Defendants' present conduct.

42.    ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to members of the Class and predominate over any questions affecting only individual Class Members. All members of the Class and Sub-Class have been subject to the same or substantially similar conduct and their

- 8 -

claims are based on the widespread dissemination of the unlawful, deceptive, and unfair conduct by Defendants. The common legal and factual questions include, but are not limited to, the following:

A. The nature, scope, and operations of the wrongful practices of Defendants;

B. Whether Defendants negligently or intentionally blocked or delayed customers access to their funds from their Gift Cards;

C. Whether Defendants knew or should have known that their business practices were misleading, unfair and/or unlawful;

D. Whether Defendants actions or inactions violated the customer protection statutes invoked herein;

E. Whether Defendants' conduct with regards to advertising, selling or issuing the Pre-Paid Visa Credit Cards violated California law and/or public policy;

F. Whether Plaintiff and the Class members were damaged by Defendants' conduct and, if so, the appropriate amount of damages;

G. Whether, because of Defendants' misconduct, Plaintiff and the Classes are entitled to equitable and declaratory relief, and, if so, the nature of such relief; and

H. Whether Defendants were unjustly enriched by their unlawful and unfair business practices.

43.     ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Classes in that they were not able to receive the full benefits of the Gift Cards due to the wrongful practices of Defendants. Plaintiff's claims arise from the same practices and/or substantially similar course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

44.     ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation. Plaintiff has no adverse or antagonistic interests to those of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Classes.

45.     ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the courts and the issues raised by this action.

46.     The damages or other financial detriment suffered by individual members of the Classes may be relatively small compared to the burden and expense that would

be entailed by individual litigation of the claims against the Defendants. The injury suffered by each individual member of the proposed Classes is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

47.     It would be virtually impossible for members of the proposed Classes to individually redress effectively the wrongs to them without Court intervention. Even if the members of the proposed Classes could afford such litigation, the Court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.

48.     By contrast the class action device used in conjunction with the Public Injunctive Relief sought as a Private Attorney General Action pursuant to Cal. Business and Professions Code § 17204 presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

49.     Unless the Classes are certified, Defendants will continue their unlawful, unfair, and predatory practices as described herein. If the Classes are certified, the harms to the public and the Classes can be easily rectified.

50.     Defendants have acted or refused to act on grounds that are generally applicable to the Classes so that declaratory and injunctive relief is appropriate to the

Classes as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

### III.   <u>FIRST CAUSE OF ACTION</u>

**Violations of the California Consumer Legal Remedies Act**

**(Cal. Civ. Code § 1750, *et seq.*)**

**(On Behalf of Plaintiff and the California Sub-Class against both Defendants)**

51.    Plaintiff realleges and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

52.    Plaintiff brings this claim individually and on behalf of members of the proposed California Sub-Class.

53.    The CLRA prohibits unfair or deceptive practices in connection with the sale of goods or services to a consumer.

54.    The CLRA is meant to be "liberally construed and applies to promote its underlying purposes, which are to protect customers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

55.    The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a).

56.    The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale

or repair of goods." Cal. Civ. Code § 1761(b).

57.    The Gift Cards constitute either "goods" or services, or both, bought for use primarily for personal, family, or household purposes.

58.    Defendants InComm and Pathward are each a "person" as defined in Cal. Civ. Code § 1761(c).

59.    Plaintiff and Class members are "consumers" who purchased or are the current owners of the Gift Cards, and were denied access to or full use of Gift Cards, which constitute goods or services for personal, family, or household purposes as defined by the CLRA. Cal. Civ. Code § 1761(d).

60.    Each of the debit card purchases are "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

61.    Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods or services to consumers.

62.    Cal. Civ. Code § 1770(a)(5) prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, and advertising goods or services with intent not to sell them as advertised.

63.    Cal. Civ. Code § 1770(a)(9) prohibits advertising goods or services with

the intent not to sell them as advertised.

64. Cal. Civ. Code § 1770(a)(14) prohibits representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve.

65. By, at minimum, misrepresenting that Gift Cards would function correctly, Defendants violated the CLRA.

66. For instance, Defendants represented that the value of the initial Gift Card purchased by KEVIN SMITH was $200.00. However, in actuality, that Gift Card was worthless as Plaintiff was unable to access or make purchases with the card. Therefore, Defendants represented that the Gift Card was worth $200 more than what it was actually worth upon activation.

67. Plaintiff suffered actual monetary damages as a direct and proximate result of Defendants' violations of the CLRA, as he expected the Gift Card to be worth $200.00, but instead, he received a Gift Card worth nothing, as it could not be used and InComm has failed to send a replacement card.

68. Upon information and belief, Defendants' violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was wrongful under California law and was motivated in substantial part by Defendants' self-interest, monetary gain, and increased profits.

69. Plaintiff further alleges that Defendants knew, or reasonably should have known, that harm was likely to result to Plaintiff. Defendants engaged in such unfair

and deceptive conduct notwithstanding such knowledge.

70.    Plaintiff suffered an "injury in fact," because Plaintiff's money was lost, as a direct and proximate result of Defendants' conduct alleged herein.

71.    As a direct and proximate result of Defendants' violations of the CLRA's statutory sections alleged herein, Plaintiff is entitled to a declaratory judgment that Defendants violated the CLRA.

72.    Filed concurrently with this Complaint as **Exhibit A** is a signed affidavit from Plaintiff, pursuant to Cal. Civ. Code § 1780(d).

73.    On or about September 15, 2022, Plaintiff, through counsel, served on Defendants or their agents a notice of alleged CLRA violations via certified mail, which asked Defendants to correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation. This correspondence advised Defendants that such action must be taken within thirty (30) calendar days.

74.    This cause of action is for injunctive relief only at this time, and Plaintiff reserves the right to amend the Complaint to assert actual, punitive, and statutory damages against Defendants pursuant to Cal. Civ. Code § 1782.

75.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

76.    Plaintiff seeks public injunctive relief pursuant to Cal. Civ. Code § 1780, *et. seq.* ("CLRA") to benefit the general public directly by bringing an end to

Defendants' unlawful business practices which threaten future injury to the general public.

## IV.   <u>SECOND CAUSE OF ACTION</u>

### Violations of the California Unfair Competition Law

### (Cal. Bus. & Prof. C. § 17200, *et. seq.*)

### (On Behalf of Plaintiff and the California Sub-Class against both Defendants)

77.   Plaintiff realleges and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

78.   The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

79.   The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *A.*   **"Unfair" Prong**

80.   A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

81.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in a misleading, deceptive and unfair practices of intentionally misrepresenting and/or omitting the fact from consumers that they would either have delayed, limited or no access at all to the funds in their Gift Cards.

82.    Further, consumers, such as KEVIN SMITH and members of the Sub-Class, paid Defendants an activation fee of $5.95 to have access to the funds listed as the face-value of their Gift Cards. Upon activation, consumers realized that they had less funds on their Gift Cards than was advertised. The fact that Defendants charged an activation fee for Plaintiff and Sub-Class Members to utilize all of the funds loaded onto the Gift Cards yet deprived Plaintiff and Sub-Class Members of all of the funds loaded onto their Gift Cards is unfair in and of itself.

83.    Notably, InComm advertises their Gift Cards as providing consumers with access to all of the funds they have loaded onto those cards, exclusive of the $5.95 activation fee. However, when it comes time for consumers to activate their Gift Cards, they are often left with less than what was initially loaded onto those cards at purchase, or alternatively, the Gift Cards do not work at all.

84.    Through their practices, Defendants make or save millions of dollars which should have, in all fairness, been permanently credited to Plaintiff and the California Sub-Class.

85.    Defendants' acts and practices offend an established       public       policy

of transparency when it comes to advertising goods and services, and are immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

86.     The harm to Plaintiff and Class Members grossly outweighs the utility of Defendant's practices as there is no utility to Defendants' practices.

**B.     "Fraudulent" Prong**

87.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming general public.

88.     Defendant's acts and practices alleged above constitute fraudulent business acts or practices as they deceived KEVIN SMITH and Sub-Class Members and are highly likely to deceive members of the consuming public.

89.     As described with particularity above, Defendant InComm represents to consumers, as an agent of Pathward, that the amount loaded onto the Gift Cards, not including the activation fee, is the amount that consumers would be able to withdraw from the Gift Cards.

90.     However, as demonstrated above, Sub-Class Members only had a fraction of the amount of funds loaded onto the Gift Cards available to them and were unable to determine why that was the case since Defendants made it difficult for them to access the accounts associated with their respective Gift Cards.

### C.     "Unlawful" Prong

91.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

92.     Defendants' acts and practices alleged above constitute unlawful business acts or practices as they have violated the plain language of the CLRA, as described in Plaintiff's First Cause of Action.

93.     The violation of any law constitutes an "unlawful" business practice under the UCL.

94.     These acts and practices alleged were intended to or did result in violations of the CLRA.

95.     Defendants' practices, as set forth above, have misled Plaintiff, the Sub-Class Members, and the public in the past and will continue to mislead them in the future. Consequently, the practices of Defendants constitute unfair and unlawful business practices within the meaning of the UCL.

96.     Pursuant to the UCL, Plaintiff and the Sub-Class are entitled to preliminary and permanent injunctive relief and order Defendants to cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff and the Sub-Class of all the revenues associated with this unfair and unlawful competition, or such portion of said revenues as the Court may find applicable.

# V.     **THIRD CAUSE OF ACTION**

## Unjust Enrichment

## (On Behalf of Plaintiff, the Class and the California Sub-Class against both Defendants)

97.     Plaintiff realleges and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Sub-Class against Defendants.

99.     "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc.*, 119 F. Supp. 3d 1130, 1142 (N.D. Cal. 2015); *see also Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'")

100.     "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred 'is an obligation (not a true contract [citation]) created by the

law without regard to the intention of the parties, and is designed to restore the aggrieved party to her or her former position by return of the thing or its equivalent in money.'" *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

101.   Plaintiff, the Class and Sub-Class members conferred non-gratuitous benefits upon Defendants through activation fees and loading funds onto Gift Cards, that they were subsequently prevented from using as reasonably expected, whether or not they paid the money themselves or later become the owners of the Gift Cards.

102.   Defendants significantly and materially increased Defendants' revenues, profit margins, and profits by unjustly enriching Defendants at the expense and to the detriment of Plaintiff, the Class and Sub-Class members.

103.   Defendants owe money to Plaintiff, the Class and Sub-Class for the improper conduct described herein. Specifically, Plaintiff, the Class and Sub-Class members either paid for one or more Gift Cards to use anywhere MasterCard or Visa was accepted, or were provided with such cards for their own use.

104.   However, by charging an activation fee and subsequently providing Plaintiff, Class and Sub-Class members with nothing when the Card does not function, or with less than what was loaded onto the Gift Cards (i.e., less than what was represented would be available on the Gift Cards for Plaintiff, Class and Sub-Class members to use), Defendants retained monies they were not otherwise entitled to, resulting in a benefit to Defendants by way of increased profits and detriment to

Plaintiff, the Class and the Sub-Class members. At the very least, the delay in providing Plaintiff, the Class and Sub-Class full access to all the funds loaded on the Gift Cards unjustly enriched Defendants at the expense of Plaintiff, the Class and Sub-Class.

105.   Defendants are therefore indebted to Plaintiff, the Class and the Sub-Class in a sum certain, specifically the deed actually paid by the purchasers of the Gift Cards.

106.   Further, Defendants are indebted to Plaintiff, the Class and Sub-Class in a sum certain for the additional money had and received by the Defendants, which the Defendants in equity and good conscience should not retain.

107.   Defendants are liable to Plaintiff, the Class and Sub-Class in the amount of unjust enrichment or money had and received to be determined at trial.

108.   Defendants' retention of any benefit collected directly and indirectly from the payments for use of the Gift Cards offered by Defendants violates principles of justice, equity, and good conscience.

109.   Plaintiff, the Class and Sub-Class members are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiff, the Class and the Sub-Class members the benefits that Defendants have unjustly retained.

110.   Defendants have retained such monetary benefits for their own financial gain. Thus, Defendants have been unjustly enriched in retaining the revenues and profits from the payments of Plaintiff, the Class and Sub-Class, which retention under

these circumstances is unjust and inequitable.

111.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff, the Class and Sub-Class members have suffered concrete harm and injury, including, but not limited to, monetary loss in connection with their purchases of the goods or services pertaining to the Gift Cards as well as the loss of funds that were loaded onto the Gift Cards prior to activation.

112.   Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff, the Class and Sub-Class would be unjust and inequitable.

113.   Plaintiff, the Class and Sub-Class members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants in a manner established by this Court.

114.   Plaintiff, the Class and Sub-Class members request the Court enter an order awarding them restitution, rescission, and/or damages, and that they are entitled to recover their reasonable attorneys' fees.

115.   Plaintiff, the Class and Sub-Class members therefore also seek pre-and-post- judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, all other Class Members similarly situated, and the general public pray for judgment against Defendants, and each of them, as to each and every cause of action, and the following remedies:

A. An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

B. An Order requiring Defendants to bear the cost of class notice(s);

C. An Order awarding declaratory and other equitable relief, including recission, as necessary to protect the interest of Plaintiff and members of the Classes;

D.      An Order enjoining Defendants from engaging in the unfair, unlawful, and deceptive business practices complained herein, including through public injunctive relief;

E. An Order requiring Defendants to pay all actual and statutory damages permitted under the causes of action alleged herein;

F. An Order requiring Defendants to pay punitive and/or exemplary damages permitted under the causes of action alleged herein;

G.      An award of pre-and-post-judgment interest;

H.      An award of attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5,

any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs;

I. An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all Class Members and, also, to restore to Plaintiff and members of the Classes all funds retained by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

J. distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

K.    Costs of this suit; and

L. Any other and further relief, including rescission, that the Court deems necessary, just, or proper.

### VII.   **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable by jury.

Dated:  September 11, 2023              Respectfully submitted,

BOWER LAW GROUP, PC

OF COUNSEL:
**ADEMI LLP**

David E Bower  SBN 119546

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shpetim Ademi
John D. Blythin
Jesse Fruchter
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com

Bower Law Group, PC
600 Corporate Pointe, Suite 1170
Culver City, California 90230
Tel: 310-446-6652
dbower@bowerlawgroup.com
attorneys for Plaintiff and those similarly
situated

- 26 -