PATTERSON BELKNAP WEBB & TYLER LLP
Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
Henry J. Ricardo (*pro hac vice*)
hjricardo@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
Brian H. Chun (SBN 215417)
1300 Clay Street, Suite 810
Oakland, California 94612
Tel. 415.357.4600
bchun@lkclaw.com

*Attorneys for Defendants*
INCOMM FINANCIAL SERVICES, INC. and PATHWARD, N.A.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SMITH, et al.,<br><br>Plaintiff,<br><br>v.<br><br>INCOMM FINANCIAL SERVICES, INC., and PATHWARD, N.A.<br><br>Defendants. | Case No.: 5:23-cv-4687<br><br>**DEFENDANTS INCOMM FINANCIAL SERVICES, INC. AND PATHWARD N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Beth Labson Freeman<br><br>Hearing Date:  April 18, 2024<br>Time:  9:00 a.m.<br>Courtroom:  3 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on Thursday, April 18, 2024, at 9:00 a.m., in Courtroom 3, Defendant InComm Financial Services, Inc. and Pathward, N.A. (collectively, "Defendants") will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for an order dismissing with prejudice the Complaint filed by Plaintiff Kevin Smith ("Plaintiff").

Plaintiff alleges that he bought Defendants' prepaid gift card product, i.e., a SecureSpend card, but it was declined when he tried to spend it. On this basis alone, he asks the Court to conclude that Defendants misrepresented the card, violating the California consumer fraud statutes. However, Plaintiff fails to allege facts supporting the key elements of his claims. Plaintiff does not identify with specificity which representation by Defendants he supposedly relied on, and what, if anything, was false or misleading about it. He also does not identify with particularity the prepaid gift card product he bought. Because his allegations are nothing more than pure speculation, Plaintiff fails to state a claim under either the California Consumer Legal Remedies Act ("CLRA") or the "fraudulent" and "unlawful" prongs California Unfair Competition Law ("UCL") with the plausibility and particularity required by the Federal Rules of Civil Procedure 8 and 9(b).

Plaintiff's claims under the "unfair" prong of the UCL and his unjust enrichment claim are entirely derivative of his other CLRA and UCL claims, and also fail for independent reasons.

Finally, Plaintiff's claims for injunctive relief under the CLRA and UCL must be dismissed for lack of standing, as Plaintiff fails to allege any future intent to purchase a SecureSpend card. His class allegations, which include consumers who purchased entirely different products and who are completely unconnected to the allegations in the Complaint, should also be stricken.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the pleadings and records on file, and such other matters as the Court deems necessary and proper to adjudicate this Motion.

Dated: December 15, 2023                    By:   /s/ Brian H. Chun

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
Brian H. Chun (SBN 215417)
1300 Clay Street, Suite 810
Oakland, California 94612
Tel. 415.357.4600
bchun@lkclaw.com

PATTERSON BELKNAP WEBB & TYLER LLP
Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
Henry J. Ricardo (*pro hac vice*)
hjricardo@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendants
INCOMM FINANCIAL SERVICES, INC. and
PATHWARD, N.A.

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES .......................................................................................................... ii

3

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

4

PRELIMINARY STATEMENT .................................................................................................... 1

5

BACKGROUND ............................................................................................................................ 2

6

ARGUMENT .................................................................................................................................. 7

7

I.    Plaintiff Fails to State a Claim Under the CLRA, or the "Unlawful" and "Fraudulent"

8          Prongs of the UCL ......................................................................................................... 8

9          A.    Plaintiff's Complaint Does Not Clearly Identify the Misrepresentation or

10                Product Purchase at Issue ....................................................................................... 9

11          B.    Plaintiff Fails to Allege That Any Representation About the Product

12                Was False or Misleading ....................................................................................... 11

          C.    Plaintiff's Complaint is Premised on Sheer Speculation .................................. 13

13

II.   Plaintiff's Additional Claims Also Fail .............................................................................. 14

14          A.    UCL "Unfair" Prong ........................................................................................... 14

15

          B.    Unjust Enrichment ............................................................................................... 16

16

III.  Plaintiff's Claims for Injunctive Relief and Class Allegations Suffer from Separate

17                Deficiencies .......................................................................................................... 17

18   B.    Plaintiff's Proposed Class Definition Includes Class Members Who Purchased

19                Different Products than Plaintiff and Should be Stricken as Overbroad .................. 18

20   CONCLUSION ............................................................................................................................ 19

21

22

23

24

25

26

27

28

DEFS. INCOMM AND PATHWARD'S MOTION TO DISMISS (Case No. 5:23-CV-4687)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................7

*Azoulai v. BMW of N. Am. LLC*,
   No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................7, 14

*Bird v. First Alert, Inc.*,
   No. C 14-3585 PJH, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ......................................17

*Brown v. Van's Int'l Foods, Inc.*,
   No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022) ..............................17

*Bush v. Vaco Tech. Servs., LLC*,
   No. 17-CV-05605-BLF, 2018 WL 2047807 (N.D. Cal. May 2, 2018) ..........................10, 18

*Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..........................................................................................15

*Choon's Design, LLC v. ContextLogic Inc.*,
   No. 19-CV-05300-HSG, 2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) ........................12, 16

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) .................................................................................15

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ...................................................................................9

*Fahey v. Whole Foods Mkt., Inc.*,
   No. 20-CV-06737-JST, 2021 WL 2816919 (N.D. Cal. June 30, 2021) ................................14

*Forrett v. Gourmet Nut, Inc.*,
   634 F. Supp. 3d 761 (N.D. Cal. 2022) .......................................................................17

*Frison v. Accredited Home Lenders, Inc.*,
   No. 10-CV-7770JM (WVG), 2011 WL 2729241 (S.D. Cal. July 13, 2011) ..........................16

*Gagetta v. Walmart, Inc.*,
   646 F. Supp. 3d 1164 (N.D. Cal. 2022) .......................................................................17

*Garcia v. Sony Computer Ent. Am., LLC*,
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ......................................................................12

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................8, 11, 15

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .................................................................................8, 9, 15

*Hodson v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) .........................9

*In re German Auto. Manufacturers Antitrust Litig.*,
    612 F. Supp. 3d 967 (N.D. Cal. 2020) ...........................................................................10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ......................................................................................11

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ....................................................................................9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................................7, 9, 10

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .......................................................................................14

*Levitt v. Yelp!, Inc.*,
    765 F.3d 1123, 1135 (9th Cir. 2014) .............................................................................14

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) .......................................................................................15

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .......................................................................................16

*Prescott v. Nestle USA, Inc.*,
    No. 19-CV-07471-BLF, 2020 WL 3035798 (N.D. Cal. June 4, 2020) ....................................9

*Robie v. Trader Joe's Co.*,
    No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ................................14

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...........................................................................9

*Rubio v. U.S. Bank N.A.*,
    No. C 13-05752 LB, 2014 WL 1318631 (N.D. Cal. Apr. 1, 2014) .......................................10

*Sapiro v. Encompass Ins.*,
    221 F.R.D. 513 (N.D. Cal. 2004).................................................................................14

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
    No. 22-CV-01603-BLF, 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022).........................8, 15

DEFS. INCOMM AND PATHWARD'S MOTION TO DISMISS (Case No. 5:23-CV-4687)

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) (per curiam)................................................................7

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................................................4

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................................11

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ................................................................................7, 14

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) .......................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................................7

California Consumer Legal Remedies Act ("CLRA") ........................................... *passim*

California Unfair Competition Law ("UCL") ........................................................ *passim*

Cal. Civ. Code § 1770(a)(5), 1770(a)(9), and 1770(a)(14)............................................7, 9

**Other Authorities**

Federal Rule of Civil Procedure 8 ..................................................................................2, 9

Federal Rule of Civil Procedure Rule 9(b) ........................................................... *passim*

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) ....................................................2

Federal Rule of Civil Procedure 12(f) ..............................................................................18

DEFS. INCOMM AND PATHWARD'S MOTION TO DISMISS (Case No. 5:23-CV-4687)

**STATEMENT OF ISSUES TO BE DECIDED**

1. Is Plaintiff's vague allegation that his SecureSpend Card did not function correctly when he attempted to use it, without clearly identifying the statement that is purportedly false, sufficient to meet his obligation under Rule 9(b) to plead claims sounding in fraud with specificity?

2. Does Plaintiff plead a claim under the "unfair" prong of the UCL when he fails to identify a legislative policy that Defendants allegedly violated, and the allegations are duplicative of his other claims sounding in fraud?

3. Can Plaintiff sustain an unjust enrichment claim when, if he did purchase a SecureSpend card as alleged, his rights and obligations as a cardholder would be governed by a contract?

4. Does Plaintiff have standing to bring claims for injunctive relief when he pleads no future intent to rely on the advertisements or labels in question, or to buy the product at issue?

5. Should Plaintiff's class allegations be stricken when his class definition includes consumers who have not purchased the same product or viewed the same representations?

Defendants InComm Financial Services, Inc. ("InComm") and Pathward, N.A. ("Pathward") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

This Complaint is as threadbare as they come. Plaintiff Kevin Smith, a California consumer, asserts that InComm and Pathward led him to believe that he "would be able to withdraw" the loaded funds from the SecureSpend Visa gift cards that he purchased. This was false, he claims, because one of his SecureSpend cards was rejected as a means of payment by at least one retailer. But the Complaint does not give much more information than that. Plaintiff claims that he bought either three or four prepaid SecureSpend cards at a California supermarket, and that one of them was declined by unidentified merchants, at unspecified times, under unspecified circumstances. Plaintiff further claims that he unsuccessfully attempted to obtain a replacement card from Defendants, but likewise includes no additional information about these attempts. What is more, although Plaintiff's claims concern "anonymous" products—i.e., prepaid gift cards that are not affiliated with a named account holder—Plaintiff does not provide the identifying details, such as the 16-digit card number, that would enable Defendants to locate his card records and determine what occurred with his card. Rather, based on nothing more than the bare assertion that his card was rejected one or more times, Plaintiff asks this Court to conclude that Defendants must have misrepresented the cards to California consumers.

These skeletal allegations are insufficient to support the Complaint's sweeping claims of false advertising under the Consumer Legal Remedies Act (the "CLRA"), violations of the "unfair," "unlawful" and "fraudulent" prongs of the Unfair Competition Law (the "UCL"), and a claim of unjust enrichment. The Complaint sounds in fraud and is therefore subject to the heightened pleading standards of Rule 9(b). Yet Plaintiff fails to allege facts establishing (1) what representations he relied upon when purchasing the SecureSpend cards, or (2) how the cards fell short of those representations. He refers to a "display" where the cards were available for sale allegedly touting the cards as "safe for online shopping, travel, paying bills and more," but he does not allege facts suggesting that any part of that representation was false.

DEFS. INCOMM AND PATHWARD'S MOTION TO DISMISS (Case No. 5:23-CV-4687)

Alternatively, the Complaint also hints in a few places that Defendants misrepresented the "face value" of the cards, by presenting them as worth $100 or $200, but failing to load the cards with their assigned face values. But Plaintiff has no facts to support that alternative theory, either, and many of the allegations in his Complaint contradict it. This is a consumer fraud claim in search of a fraud.

Indeed, Plaintiff alleges that his card was declined on one or more occasions, and asks the Court to conclude from that fact alone that Defendants misrepresented the cards. But given the absence of any factual detail about these episodes, that leap is sheer speculation. For example, Plaintiff does not say which retailers rejected his card, or whether those retailers even accepted Visa cards as a form of payment. He does not say what he was trying to purchase, or allege that its cost (including tax) was less than the available balance of the card. And he does not say where he kept the card before these unsuccessful attempts, or whether anyone else in his household had access to it. Without this information, it is impossible to discern why Plaintiff's card was rejected, and most of the possible explanations do not involve misrepresentations by Defendants. This Court need not credit Plaintiff's speculative theory in the absence of facts to support it. Given these critical deficiencies, Plaintiff's Complaint not only falls short of Rule 9(b)'s requirements, but also the more permissive standards of Rule 8. His Complaint should be dismissed in its entirety.

The Complaint suffers from other flaws as well. In addition to being duplicative, the quasi-contractual unjust enrichment claim fails because Plaintiff alleges a contractual relationship between him and Defendants. Plaintiff also fails to allege an ongoing risk of future injury, which defeats his claim for injunctive relief. And finally, Plaintiff's class action allegations—which purport to encompass numerous products other than the one Plaintiff purchased—are so overbroad that they can be stricken at the pleading stage.

### BACKGROUND

**A. Defendants InComm and Pathward**

InComm, a financial technology company headquartered in Georgia, distributes and services a variety of prepaid gift cards. Compl. ¶ 1. Among these are "open-loop" gift cards,

which consumers can purchase and activate at one retailer, then redeem up the face value at any retailer that accepts the relevant network (e.g., Visa).  *Id.*  InComm provides both reloadable and non-reloadable open-loop gift cards.  *Id.* ¶¶ 3-4.  Non-reloadable gift cards—including the SecureSpend cards that Plaintiff claims to have purchased— are generally "anonymous," which means that they are not associated with a particular individual or accountholder, and can easily be transferred as gifts.  *Id.* ¶¶ 3-4.

The SecureSpend card funds are loaded onto the card upon activation, and become available within 24 hours of activation.  *See* Ex. C[1], http://tinyurl.com/4x2ht2hx.  InComm offers the cards in partnership with various "issuing banks."  Pathward serves as the issuing bank for the non-reloadable SecureSpend Visa gift cards referenced in the Complaint.  Compl. ¶ 17.

**B.  Plaintiff Kevin Smith's Alleged Purchase of SecureSpend Gift Cards**

Plaintiff alleges that he purchased either three (Compl. ¶ 8) or four (Compl. ¶¶ 23-24) non-reloadable SecureSpend Cards "on or around" December 2021.  He alleges that he loaded each of the three or four cards with either $100 or $200.  Compl. ¶¶ 23-24.  Much of the Complaint singles out *one* of the $200 cards Plaintiff bought (the "Gift Card") as the one that retailers rejected, and hence the source of Plaintiff's dissatisfaction.  *See* Compl. ¶¶ 23; 27-29.  Yet the Complaint also claims that Plaintiff deemed all three or four "Gift Cards" (plural) he purchased to be unsatisfactory, though it offers no facts about Plaintiff's experiences with the other cards.  Compl. ¶¶ 25-27.  Meanwhile, other allegations in the Complaint define "Gift Cards" (plural) to include not just the SecureSpend cards that Plaintiff purchased, but *all* prepaid products that InComm distributes, including "store-branded cards such as 'Target' gift cards."  Compl. ¶ 1.  As a result, it is unclear which "Gift Card(s)" the Complaint is talking about, or even which "Gift Card(s)" form the basis of Plaintiff's claims.

---

[1] Citations to "Ex." are to exhibits attached to the Declaration of Jane Metcalf, filed herewith. Paragraph 5 of the Complaint references the SecureSpend website, which states that "TERMS AND CONDITIONS ARE APPLIED TO GIFT CARDS" and directs website visitors to the "Cardholder Agreement" in two separate places.

3

Similarly, although Plaintiff claims to have been somehow misled about the cards he purchased, he does not identify the misleading statement at issue, or explain why it was misleading. He alleges that, when purchasing the cards at a Lucky Supermarket in Mountain View, California, the "display for the Gift Cards advertised" the cards as (1) "Non-Reloadable Gift Card;" (2) "Safe for online shopping, traveling, paying bills and more!"; and (3) "NO FEES after purchase." *Id.* ¶ 22. But Plaintiff does not include an image of this "display" or provide any other details about it. He does not explain which aspect of the display, if any, affected his decision to purchase SecureSpend gift cards. Nor does he explain what other prepaid gift card product(s), if any, were available at the same display rack.

For that matter, Plaintiff's Complaint leaves room for uncertainty as to whether he in fact purchased SecureSpend cards, as opposed to another prepaid gift card product. Many of Plaintiff's allegations are inconsistent with his assertion that he bought a SecureSpend card. Plaintiff claims that, "[i]n order to activate the [SecureSpend] cards," he "had to create an online account . . . [at] www.incomm.com/account/activate." Compl. ¶ 26. But no such process is necessary for SecureSpend cards, which are activated at the point of sale, and do not require the creation of an online account. *See* Ex. A, https://www.securespend.com/help; *see also* Compl. ¶ 5 (referencing "securespend.com") *and United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (holding that the Court can consider "documents incorporated by reference in the complaint.") Plaintiff also alleges that he ultimately sought a replacement card by calling customer service (Compl. ¶ 29)— but the customer service number he claims to have called is *not* the one associated with SecureSpend Visa cards. *See* Ex. C. To add still another layer of mystery, the retailer where Plaintiff claims to have purchased the cards— "Lucky Supermarket in Mountain View, California"—does not appear to exist. *See* Compl. ¶ 21; *see also* Ex. B, https://tinyurl.com/pufm8njv (showing search results for Lucky Supermarket locations in Mountain View, CA).

The vagueness of Plaintiff's remaining allegations only compounds the uncertainty on this point. Plaintiff does not provide the 16-digit card number of the SecureSpend card(s) he allegedly purchased. For an "anonymous" prepaid gift card such as this, which has no designated account

holder, that information is essential to locate the card record.   Plaintiff's omission of this information leaves Defendants with no means of testing his allegations.   Thus, Plaintiff's Complaint includes no facts supporting his contention that he purchased SecureSpend cards, and many facts contradicting it.

### C. Plaintiff's Alleged Dissatisfaction with the Gift Cards

Plaintiff's Complaint does not get more comprehensible from there.  Even assuming that Plaintiff bought SecureSpend cards somewhere, **and** relied upon the alleged "display" statement when doing so, his Complaint does not allege with any specificity that the statement was false.  He does not allege that the SecureSpend cards are **not** "non-reloadable gift cards," or that he was charged fees after purchase.  Compl. ¶ 22.  Nor does he allege any facts to suggest that the cards he purchased were not "safe for online shopping, travel, [or] paying bills."  *Id.*  For that matter, he does not allege that he ever attempted to use any of the cards for any of these purposes.  Accordingly, he cannot and does not allege that it turned out to be "unsafe" to do so.

Rather, Plaintiff's entire Complaint is premised on his vague allegations of dissatisfaction with one of the $200 cards that he purportedly purchased.  He alleges that "[e]ach time Plaintiff attempted to use th[at $200] Gift Card to pay for a product or service, the Card was declined." Compl. ¶ 28.[2]  But that is all he alleges on this critical subject.  He does not say when the card was declined, or where, or what reason (if any) the retailer gave.  He does not say what became of the card between the time Plaintiff purchased it and the time it was supposedly declined.  As a result, there are numerous plausible explanations for Plaintiff's alleged experience, the large majority of which have no bearing on SecureSpend cards' "safe[ty] for online shopping, travel[ing], [and] paying bills."  Compl. ¶ 22.  Perhaps the purchase Plaintiff was attempting exceeded the available balance on the card, once tax and other charges were factored in.  Perhaps the merchant did not accept the card network in question, or its card reader was broken.  Perhaps a member of Plaintiff's

---

[2]  As noted above, Plaintiff also claims to have purchased either two or three additional SecureSpend cards, but his allegations about those are even more vague.  All he says about them is that they did not "function correctly."  Compl. ¶¶ 8, 25.

1    household had already redeemed some or all of the card's balance.  With no information about

2    either Plaintiff's cards or the occasions on which they were declined, it is not clear whether or how

3    the cards supposedly fell short of the representations that Plaintiff purportedly observed at the card

4    display.

5              In addition to referencing the display statements, Plaintiff also alleges in cursory fashion

6    that Defendants misrepresented the face value of the card at the time of purchase.  According to

7    Plaintiff, his $200 card turned out to be "worthless," so Defendants must have "represented that

8    the [SecureSpend] Card was worth $200 more than it was actually worth upon activation."  Compl.

9    ¶ 66.  In other words, he asserts that Defendants put no money on the card, and sold him a worthless

10   piece of plastic.  Yet elsewhere in the Complaint, he backtracks on this outlandish claim, allowing

11   that "[t]he [$200] Face Value of Plaintiff's Card[] was **either** partially or completely depleted, **or**

12   never loaded onto the cards."  Compl. ¶ 7 (emphasis added).  And still elsewhere, he alleges that

13   Defendants' purported misrepresentations leave consumers with "**less than what was initially**

14   **loaded onto th[eir] cards at purchase**"—thus acknowledging that the cards are, in fact, loaded

15   with their face value at purchase.  Compl. ¶¶ 82-83 (emphasis added).  These contradictory

16   allegations make clear that Plaintiff's claim to have purchased a "worthless" card is sheer

17   speculation.  Not even Plaintiff can commit to this theory.

18             Once again, the question whether Plaintiff's card was (1) not properly activated or (2)

19   activated and later "depleted" would be easy to answer if his Complaint included any identifying

20   information about his cards.  Without those details, by his own admission, it is impossible to know

21   whether there was a problem activating his card funds, whether the card was properly activated

22   but "depleted" before Plaintiff's alleged unsuccessful attempts to use it, or whether there is some

23   other explanation for Plaintiff's experiences of having the card declined.  Compl. ¶ 7.

24             Finally, Plaintiff's allegations about his purported experience with Defendants' customer

25   service are unhelpful to his claims at best, and damaging at worst.  Compl. ¶¶ 9, 29-32.  As noted

26   above, Plaintiff claims to have sought assistance by calling a customer service number that is not

27   associated with SecureSpend cards.  And even if Plaintiff had managed to allege that he called the

28   correct number, his allegations on this subject are woefully deficient.  Although he claims he was

promised a replacement card, he does not say when he called, with whom he spoke (other than that the person was "in the Philippines"), what information he provided, what information (if any) he was given in response, or what contact information he provided in order to receive a replacement card. Instead, Defendants are left to speculate about what might have gone wrong with Plaintiff's customer service experience.

**D. Plaintiff's Causes of Action**

Based on these bare facts, Plaintiff asserts claims under CLRA Sections 1770(a)(5), 1770(a)(9), and 1770(a)(14); the UCL, Cal. Bus. & Prof. Code § 17200, including the "unlawful," "unfair" and "fraudulent" prongs thereof; and for unjust enrichment. The CLRA claim is limited to injunctive relief, while Plaintiff seeks injunctive relief as well as restitution and disgorgement under the UCL.

**ARGUMENT**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal quotations and citation omitted). This requires plaintiffs to allege "well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

An even higher standard governs when, as here, the "pleading . . . as a whole" is "grounded in fraud" or "sound[s] in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Such complaints are governed by Rule 9(b), which requires that "the circumstances constituting fraud or mistake [] be stated with particularity." Fed. R. Civ. P. 9(b). That is, a plaintiff must provide "an account of the time, place, and specific content" of an allegedly false or misleading statement. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff cannot evade this heightened standard by

7

restyling a UCL complaint as arising under the "unfair" prong, since "[t]he applicability of Rule 9(b) hinges not on the elements of the claim but rather on the nature of the allegations themselves." *Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-CV-01603-BLF, 2022 WL 17170159, at *7 (N.D. Cal. Nov. 22, 2022).

Here, because Plaintiff's central allegation is that Defendants somehow misrepresented the SecureSpend cards, his entire Complaint is subject to Rule 9(b). Yet he fails to allege with particularity what product(s) he purchased, what representations he relied upon, and how the card(s) fell short of those representations. These critical defects warrant dismissal of his entire Complaint. Moreover, Plaintiff's claims for injunctive relief and class allegations suffer from additional defects.

## I. Plaintiff Fails to State a Claim Under the CLRA, or the "Unlawful" and "Fraudulent" Prongs of the UCL

Plaintiff's CLRA claims are coextensive with his claims under the "unlawful" and "fraudulent" prongs of the UCL. Plaintiff alleges that Defendants violated the CLRA by representing that the Gift Cards "would function correctly," when they did not. Compl. ¶ 65. That alleged CLRA violation, in turn, is the predicate offense for Plaintiff's claim under the "unlawful" prong of the UCL. Compl. ¶ 92. By the same token, Plaintiff purports to assert a claim under the "fraudulent" prong of the UCL, on the grounds that Defendants allegedly "deceived [Plaintiff] and [putative class members]" about the "functioning" of the cards. Compl. ¶¶ 87-89. Each of these causes of action is functionally identical, and all accordingly rise or fall together. *See Hodson v. Mars, Inc.,* 891 F.3d 857, 865 (9th Cir. 2018) (dismissing the unlawful prong of a UCL claim because it was linked to the CLRA claim, which the court had already dismissed); *Hadley v. Kellogg Sales Co.,* 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (noting that "[g]enerally, a violation of the . . . CLRA is also a violation of the fraudulent prong of the UCL" and analyzing the two together because "the same standard for fraudulent activity" governed both statutes).

Here, all three claims are doomed by Plaintiff's failure to allege with specificity what representation(s) he relied on, what product(s) he purchased, and in what way(s) the representations at issue were false. Each of these deficiencies is independently fatal to his claims.

### A. Plaintiff's Complaint Does Not Clearly Identify the Misrepresentation or Product Purchase at Issue

To survive dismissal on this trio of claims, Plaintiff must allege "false advertising violations . . . *premised on some statement or representation by the defendant about the product*." *Prescott v. Nestle USA, Inc.,* No. 19-CV-07471-BLF, 2020 WL 3035798, at *3 (N.D. Cal. June 4, 2020) (internal quotation marks and citation omitted; emphasis added).  Plaintiff must therefore "state the time, place, and specific content of the false representations".  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotation marks omitted); *see also Kearns*, 567 F.3d at 1124 ("the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct") (internal quotation marks omitted).

Further, Plaintiff must allege not only that the misrepresentations occurred, but that "the deceptive practice caused pecuniary loss" to him.  *See Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018).  This generally requires a consumer-fraud plaintiff to "plead actual reliance" on the alleged misstatement.  *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1118 (N.D. Cal. 2016); *see also In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014) (identifying "reliance on [a] misrepresentation" as an element of a CLRA 1770(a)(5) claim).  An "allegation that the consumer would not have bought the product but for the alleged misrepresentation" is sufficient to plead actual reliance.  *Prescott,* 2020 WL 3035798 at *6.

Plaintiff's Complaint falls far short of these standards, by failing to specify either the "misrepresentation" at issue or the "product" it purportedly induced him to purchase.  Although he claims to have encountered a retail "display" bearing three claims—i.e., "Non-Reloadable Gift Card[s]," "Safe for online shopping, traveling, paying bills and more," and "NO FEES after purchase"—he does not say which of these, if any, he relied upon when purchasing the cards.  On the "time" and "place" of the purported misrepresentations, Plaintiff's Complaint is even more deficient.  He alleges only that he encountered the statement "[o]n or around December 2021," at a "Lucky Supermarket" that does not appear to exist.  Compl. ¶¶ 20-22.  These vague, conclusory allegations do not satisfy the standards of Rule 8, much less Rule 9(b).

1    Plaintiff's Complaint also insinuates that Defendants "misrepresented" the $200 "face

2  value" of at least one SecureSpend card, thereby inducing him to purchase what he claims was a

3  "worthless" card.  But to the extent Plaintiff purports to premise his Complaint on Defendants'

4  "misrepresentation" of the card's face value, his allegations on that score are just as inadequate.

5  He provides *no* identifying information for the card at issue, leaving Defendants unable to locate

6  the card records or verify its initial face value.  He is not even clear on how many cards he bought,

7  or how many of those cards were allegedly "worthless."  In short, Plaintiff has failed to specify

8  what statement(s) he believes were misleading, and where Defendants made those statements.

9  Without this basic information, his Complaint fails to "give defendants notice of the particular

10  misconduct . . . so that they can defend against the charge and not just deny that they have done

11  anything wrong."  *Kearns*, 567 F.3d at 1124 (internal quotations omitted).

12    What is more, the few facts that Plaintiff does allege leave significant room for doubt as to

13  whether he purchased Defendants' prepaid gift card products at all.  Though he repeatedly claims

14  to have bought Defendants' "SecureSpend" cards, *see* Compl. ¶¶ 1, 22-24, the other allegations in

15  his Complaint contradict this assertion.  He claims to have activated the card(s) at an InComm

16  website, but SecureSpend cards are activated at the point of sale, and thus require no online account

17  activation.  Similarly, Plaintiff claims to have called a customer service number for his card that

18  is not associated with SecureSpend Visa cards.  These inconsistencies preclude Plaintiff from

19  plausibly alleging that he even purchased SecureSpend cards, let alone that he relied upon

20  Defendants' representations when doing so.  *See, e.g.*, *Bush v. Vaco Tech. Servs.*, LLC, No. 17-

21  CV-05605-BLF, 2018 WL 2047807, at *9 (N.D. Cal. May 2, 2018) (finding plaintiff's "cause of

22  action [was] not plausible in light of the contradictory allegations elsewhere in the FAC"); *Rubio

23  v. U.S. Bank N.A.*, No. C 13-05752 LB, 2014 WL 1318631, at *13 (N.D. Cal. Apr. 1, 2014)

24  (granting motion to dismiss where "Plaintiff's claim [was] contradicted by other allegations in the

25  FAC"); *In re German Auto. Manufacturers Antitrust Litig.*, 612 F. Supp. 3d 967, 979 (N.D. Cal.

26  2020) (same).

27    In sum, Plaintiff is required to allege with particularity (1) that Defendants made a

28  misrepresentation about the product; and (2) that he purchased the product in reliance on that

misrepresentation.    Yet Plaintiff's Complaint fails to identify Defendants' purported misrepresentation(s) with particularity, and does not plausibly allege that he purchased the products at issue at all.  These defects are fatal to his CLRA claim as well as his UCL "unlawful" and "fraudulent" claims.

**B.  Plaintiff Fails to Allege That Any Representation About the Product Was False or Misleading**

Even assuming that Plaintiff purchased a SecureSpend card, and that he did so in reliance on some statement by Defendants, he must also allege with particularity "what is false or misleading about [the challenged] statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted); *see also Hadley,* 243 F. Supp. 3d at 1085.  Plaintiff has not done that with respect to any of the statements that he references in his Complaint.

As set forth above, Plaintiff's Complaint first refers to the product "display" that purportedly included the statements "Non-Reloadable Gift Card[s]," "Safe for online shopping, traveling, paying bills and more," and "NO FEES after purchase."  But nowhere in his Complaint does he allege that any of these statements was false.  His Complaint says nothing about the cards' non-reloadable status, about fees after purchase, or about the cards' safety for "online shopping, traveling, [or] paying bills."  Compl. ¶ 22.  Although Plaintiff alleges that one of his cards was declined "each time" he tried to use it, he does not allege that these episodes occurred when he was "online shopping, traveling, [or] paying bills." *Id.*  Nor does he otherwise connect the episodes to the cards' "safety" for those purposes.

Instead, Plaintiff seemingly asks the Court to infer that the statement about card "safety" must have been false because his card was "declined" on an unspecified number of occasions, under unknown circumstances.  But Plaintiff does not give any reason to credit this explanation for the cards' rejection over the numerous other plausible explanations, such as that the product's cost exceeded the available balance.  The Court need not and should not accept these "unwarranted deductions of fact" and "unreasonable inferences" when construing the pleadings. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).  In any

11

1    event, the generic statement that the cards were "safe" for various purposes, without more, is non-

2    actionable puffery.  *See Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL

3    1354781, at *8 (N.D. Cal. Apr. 13, 2017) (holding that the statement that an automatic car door

4    was "safe" was "[g]eneric sales talk" that "[was] not actionable under the UCL or the CLRA" as

5    "there is nothing 'specific and measurable' about the word 'safely'").  Accordingly, he has not

6    plausibly alleged that any part of the statement he purportedly saw at the cards' in-store "display"

7    was false or misleading.  *See, e.g., Choon's Design, LLC v. ContextLogic Inc*., No. 19-CV-05300-

8    HSG, 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020) (dismissing plaintiff's claim that the

9    statement "Verified by Wish" was misleading when it lacked "any specificity" about how the

10   assertion was supposedly inadequate or "why" consumers would be misled by it.)

11          The same defect dooms his alternate theory that Defendants misrepresented the card's face

12   value as being $200, when in fact the card was "worthless."  *See* Compl. ¶¶ 66-67, 83.  To prevail

13   on this theory, Plaintiff must allege that his card was "worthless" at the time of activation, i.e., that

14   it was not loaded with funds in the first place.  If the $200 face value was loaded to the card

15   initially, but somehow became inaccessible before the episodes when Plaintiff tried to use the

16   cards, that would not show that Defendants' representation as to the card's ***initial*** face value was

17   false.  Therefore, to demonstrate the falsity of that representation, Plaintiff must plausibly allege

18   that the cards were worthless at the time he purchased them.  *See Yastrab v. Apple Inc.,* 173 F.

19   Supp. 3d 972, 979 (N.D. Cal. 2016) (holding that "representations made by Apple that its iPhones

20   have Bluetooth and Wi-Fi" were not false or misleading when the iPhones *did* have those functions

21   when plaintiffs purchased them, it was only some months or years later when the functions stopped

22   working, and the advertisements did not "say or imply anything about what the iPhone will or will

23   not do if the software is changed in the future"); *Garcia v. Sony Computer Ent. Am., LLC*, 859 F.

24   Supp. 2d 1056, 1059-1060, 1063 (N.D. Cal. 2012) (holding that because it was true "at the time

25   [he] purchased his unit" in 2006 that plaintiff's PS3 was "designed to play PlayStation 3 format

26   software", the statement was not false or misleading even if it was true that his PS3 *subsequently*

27   became unable to play some newer games in 2010 due to advances in video game technology.).

28

1    The Complaint fails to allege any such thing.  In fact, Paragraph 7 admits uncertainty on

2    this point, alleging that the card funds were "*either* partially or completely depleted, *or* never

3    loaded onto the cards" to begin with.  Compl. ¶ 7 (emphasis added).  Meanwhile, other allegations

4    in the Complaint are directly at odds with the latter explanation.  Plaintiff's claim that he activated

5    the card online, while perplexing, suggests that he verified its initial $200 balance.  Compl. ¶¶

6    26-27.  And at several other points, the Complaint insinuates that Defendants' cards are typically

7    loaded with funds at activation, but that the funds then disappear through some unknown

8    mechanism.  *See* Compl. ¶ 83 (consumers "are often left with less than what was *initially loaded*

9    *on those cards at purchase*") (emphasis added); ¶ 90 (persons "only had a fraction of the amount

10   of *funds loaded onto the Gift Cards* available to them") (emphasis added).  These allegations—

11   that funds *already loaded onto the Gift Cards* later became unavailable—directly contradict

12   Plaintiff's claim that Defendants "misrepresented" the initial face value of the cards.

13         Finally, Plaintiff's vague allegations of dissatisfaction with Defendants' customer service

14   add nothing to his claim of deception.  *See* Compl. ¶¶ 29-34.  Plaintiff complains that he was placed

15   on hold for too long, directed to a call center "in the Philippines," and told to expect a replacement

16   card that never arrived.  *See* Compl. ¶¶ 29-34.  Plaintiff provides no additional context or

17   information regarding these calls, but even if he had, his allegations of underwhelming customer

18   service cannot cure his failure to identify a misleading statement.  *Id.* ¶ 33.  None of the "display"

19   statements referenced in Plaintiff's Complaint has anything to do with the efficiency or services

20   of its call center.  Accordingly, Plaintiff's allegations on that subject do not establish that any of

21   those statements was false.

22         In sum, even if Plaintiff could allege that he had bought SecureSpend cards in reliance on

23   Defendants' statements, he has not plausibly alleged that any of the statements he attributes to

24   Defendants was false or misleading.  This is an independent basis for dismissal of his claims.

25   **C.  Plaintiff's Complaint is Premised on Sheer Speculation**

26         Plaintiff's failure to identify a misrepresentation about the cards is not only a fatal

27   shortcoming, but reveals his entire claim to be an exercise in speculation.  Essentially, Plaintiff

28   contends that because his card was declined, Defendants must have misrepresented *something*,

13

even if he cannot say what or when.  That is not adequate to get past the pleading stage.  It is well settled that "complaints are not to be used as the hook for protracted 'fishing expeditions.'"  *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 523 (N.D. Cal. 2004) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)).  Rather, before subjecting a defendant to burdensome discovery, plaintiffs must first clear the plausibility threshold by alleging "well-pleaded facts, not legal conclusions."  *Whitaker*, 985 F.3d at 1176.  Thus, in the consumer fraud context, where Rule 9(b) applies, courts have consistently held "conclusory allegations" of a statement's falsity are "insufficient to state a claim."  *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021); *see also Fahey v. Whole Foods Mkt., Inc.*, No. 20-CV-06737-JST, 2021 WL 2816919, at *4 (N.D. Cal. June 30, 2021) (dismissing consumer fraud complaint for failure to include "any factually substantiated allegations" that the disputed statement was false).

The result can be no different here.  Indeed, Plaintiff's Complaint exemplifies the pitfalls of consumer fraud claims premised on mere "conclusory allegations."  Though Plaintiff asserts that his card was declined on one or more occasions, and speculates that a fraud by Defendants must be the explanation, in fact many other explanations are at least as likely.  Because the Complaint offers no factual basis for crediting Plaintiff's conjecture about the reason his card was rejected, Plaintiff has not raised a right to relief "above the speculative level."  *Twombly,* 550 U.S. at 555.  For all of these reasons, Plaintiff has failed to state a claim under the CLRA, the UCL "unlawful" prong, or the UCL "fraudulent" prong.

## II.    Plaintiff's Additional Claims Also Fail

Plaintiff's additional claims, for violation of the UCL "unfair" prong and for unjust enrichment, are duplicative of his primary claims, and fail for the same reasons.  These claims also suffer from additional defects.

### A.  UCL "Unfair" Prong

Plaintiff's claim of unfair business practices under the UCL is based on the same alleged conduct that forms the basis for the CLRA and other UCL claims discussed in Section I above.  *Compare* Compl. ¶¶ 81-83 (alleging unfair business practices based on intentional

14

misrepresentations and omissions to the effect that consumers are "left with less than what was initially loaded onto those cards at purchase") *with* Compl. ¶¶ 89-90 (alleging fraudulent business practices based on allegation that card purchasers had "only had a fraction of the amount of funds loaded onto the Gift Cards available to them") *and* Compl. ¶ 66 (CLRA claim based on allegation that Defendants represented that the Gift Card was worth $200 but it was "worthless").

Plaintiff cannot use the UCL "unfair" prong as a fail-safe for his deficient claims under the other two prongs.  Rather, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley*, 243 F. Supp. 3d at 1104–05; *see also Sidhu,* 2022 WL 17170159, at *9 (finding that the "unfair UCL claim [was] based on the same conduct underlying [her] other two UCL claims, and . . . therefore [had to] be dismissed.").  Plaintiff's claim of unfair business practices thus fails for the same reasons that his CLRA and other UCL claims do.

Further, Plaintiff has failed to allege a violation of legislative or public policy, as the "unfair" prong requires.  While the definition of "unfair" under the UCL "is currently in flux," *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quoting *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)), many courts have held that an "unfair" claim must be "'tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'"  *Hodson,* 891 F.3d at 866 (quoting *Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 186-87 (1999)).  Here, Plaintiff claims only that Defendants violated a "public policy of transparency when it comes to advertising goods and services." Compl. ¶ 85.  Not only is that inadequate to establish a violation of "legislatively declared policy," but it is nothing more than a rehash of Plaintiff's failed CLRA claim.

Plaintiff also alleges in conclusory fashion that Defendants' conduct is "unfair" under the so-called "balancing test" analysis for UCL "unfair" claims (*see* Compl. ¶ 86).  But as noted above, many courts have rejected that standard in favor of the more rigorous and objective "legislative policy" standard.  And in any event, Plaintiff's claim is just as deficient under the "balancing" test,

1   because he has not even identified the conduct giving rise to his claim.  Rather, as set forth above,

2   he has asked the Court to infer Defendants' misconduct solely from the contention that his

3   SecureSpend card was declined.

4      **B.  Unjust Enrichment**

5         Plaintiff's unjust enrichment claim, which is premised on the bare allegation that

6   Defendants enriched themselves by selling cards and then "prevent[ing] [consumers] from using

7   them as reasonably expected," Compl. ¶ 101, fails for similar reasons.  Unjust enrichment claims

8   that are merely derivative of UCL and CLRA claims are consistently dismissed when the

9   underlying statutory claims are dismissed.  *See, e.g.*, *Choon's Design, LLC,* 2020 WL 6891824 at

10  *5 n.4 ("Plaintiff's unjust enrichment claim also fails because it is a derivative cause of action.");

11  *Frison v. Accredited Home Lenders, Inc.*, No. 10-CV-7770JM (WVG), 2011 WL 2729241, at *5

12  (S.D. Cal. July 13, 2011) ("Because all other claims . . . are dismissed, Plaintiff's claim for unjust

13  enrichment is also dismissed . . .").  Here, Plaintiff premises his unjust enrichment claim on the

14  same allegations as his deficient UCL claim, so it should be dismissed for the same reasons.  *See*

15  Compl. ¶¶ 105-15.

16        In addition, Plaintiff's unjust enrichment claim is precluded by the existence of a binding

17  written agreement between him and the Defendants.  Unjust enrichment is an action in quasi-

18  contract, "which does not lie when an enforceable, binding agreement exists defining the rights of

19  the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp*., 96 F.3d 1151, 1167 (9th Cir. 1996).  The

20  SecureSpend Cardholder Agreement provides that it "sets forth the terms and conditions under

21  which a SecureSpend" gift card is issued, and that by activating the card, cardholders "agree to be

22  bound by the terms and conditions contained in this agreement."  *See* Ex. C.  Plaintiff alleges that

23  he activated the card.  *See* Compl. ¶ 27.  Thus, Plaintiff alleges an enforceable, binding agreement

24  governing his use of the card, which precludes any claim for unjust enrichment.

25                          \*\*\*

26        Plaintiff has not alleged facts to support his UCL, CLRA, or unjust enrichment claims.  He

27  has not identified what products he bought, what misrepresentations he claims to have relied upon,

28  or in what way those representations turned out to be false.  His allegations that Defendants

engaged in a "fraud" are premised on sheer conjecture and, in many cases, contradict one another. His Complaint should be dismissed in its entirety.

### III. Plaintiff's Claims for Injunctive Relief and Class Allegations Suffer from Separate Deficiencies

The Court should dismiss Plaintiff's entire Complaint for the reasons set forth above.  At a minimum, however, the Court should strike his claim for injunctive relief and class allegations, both of which suffer from fatal defects.

### A. Plaintiff Lacks Standing to Seek Injunctive Relief

Although Plaintiff purports to seek injunctive relief for both his CLRA and UCL claims, his allegations do not demonstrate the risk of future injury necessary to confer standing for such a claim.

Under "binding Ninth Circuit authority," previously deceived plaintiffs who seek injunctive relief must allege a particular class of future injury:  that "they desire to purchase the [p]roducts from [the] [d]efendant in the future but cannot do so in an informed manner because they cannot rely on the labels going forward." *Gagetta v. Walmart, Inc*., 646 F. Supp. 3d 1164, 1177, (N.D. Cal. 2022) (quotations omitted); *see also Brown v. Van's Int'l Foods, Inc*., No. 22-cv-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022).  Here, Plaintiff not only fails to allege a future inability to rely on Defendants' labels, but does not even allege any interest in purchasing Defendants' cards in the future.  Absent such an allegation, he cannot establish that he is at risk of ongoing injury from the alleged deception.  *See Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768 (N.D. Cal. 2022) (holding plaintiff lacked standing to pursue injunctive relief because he had not "specifically alleged a desire to purchase the Product in the future.").  He therefore lacks standing to pursue injunctive relief.

Plaintiff's declaration that he seeks "public injunctive relief" to benefit the "general public" cannot substitute for allegations establishing his own standing.  Compl. ¶ 76.  A plaintiff cannot "pursue injunctive relief on behalf of unnamed class members" when he lacks the standing to seek such relief himself.  *Bird v. First Alert, Inc.,* No. C 14-3585 PJH, 2014 WL 7248734, at *5 (N.D.

1    Cal. Dec. 19, 2014).  Having failed to establish that he is at risk of future injury, Plaintiff lacks

2    Article III standing to pursue injunctive relief on behalf of himself or others.

3    **B.   Plaintiff's Proposed Class Definition Includes Class Members Who Purchased**

4    **Different Products than Plaintiff and Should be Stricken as Overbroad**

5        Finally, the Court should strike Plaintiff's proposed class definitions, which are

6    extraordinarily overbroad.  The Complaint includes a proposed Class and California Sub-Class of

7    persons who "were blocked from use of any portion of the funds on their InComm Visa® Prepaid

8    Debit Card(s)," for any reason.  Compl. ¶¶ 37, 38.  That is, even the sub-class is not limited to

9    consumers who relied on the same representations Plaintiff purportedly did.  It is not limited to

10   consumers who were "blocked" from their funds for the same reasons (whatever those reasons

11   were).  It is not even limited to consumers who purchased the same ***product*** that Plaintiff claims

12   he did.  Rather, it encompasses all users—not just purchasers— of "InComm Visa Prepaid Debit

13   Cards."  As Plaintiff acknowledges, Defendants sell a wide variety of prepaid Visa cards, most of

14   which are not mentioned in the Complaint at all.  Plaintiff does not claim, for example, that these

15   other cards are similar to the SecureSpend cards, or that they were marketed with similar

16   representations.  Nevertheless, Plaintiff's class definition indiscriminately captures all individuals

17   who were aggrieved by any of these products, for any reason.

18       Under Rule 12(f), courts may strike class allegations where a class is plainly "overbroad"

19   relative to the allegations of the named plaintiff(s).  *See Bush,* 2019 WL 3290654, at *2 (granting

20   a motion to strike class allegations from the pleadings because a class definition applying to

21   employees staffed at any of the defendants' companies was "overbroad" when plaintiff's

22   allegations were "tailored to her job duties" and her specific job description).  In such cases,

23   striking class allegations is necessary "in light of the pleading requirements of *Twombly/Iqbal* and

24   the Court's role as a gatekeeper against discovery fishing expeditions." *Id.*  Here, Plaintiff's class

25   allegations sweep far more broadly than his individual ones, and may be improperly leveraged to

26   justify a burdensome "fishing expedition" into products other than the one Plaintiff allegedly

27   purchased.  The Court should not countenance this disconnect between a plaintiff's allegations and

28

that of the class he represents.   Accordingly, even if the Court does not dismiss Plaintiff's Complaint in its entirety (which it should), it should strike his class allegations.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: December 15, 2023

By: ___*/s/ Brian H. Chun*_____

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
Brian H. Chun (SBN 215417)
1300 Clay Street, Suite 810
Oakland, California 94612
Tel. 415.357.4600
bchun@lkclaw.com

PATTERSON BELKNAP WEBB & TYLER LLP
Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
Henry J. Ricardo (*pro hac vice*)
hjricardo@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendants
INCOMM FINANCIAL SERVICES, INC. and
PATHWARD, N.A.